UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NATHAN R. ALICEA,

                              Plaintiff,

          v.

SCORE JAIL, et al.,

                              Defendants.

No. C16-5153 RBL-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  February 17,  2017**

        Defendants South Correctional Regional Jail ("SCORE") and Correctional Officer

Spencer Summers (collectively, the "SCORE Defendants") move for summary judgment

dismissal of Plaintiff Nathan R. Alicea's claims against them pursuant to Fed. R. Civ. P. 56.

Dkt. 53.  Mr. Alicea, a former prisoner proceeding pro se, claims that the SCORE Defendants

were deliberately indifferent to his serious medical needs during the time he was confined at the

SCORE Jail between December 22, 2015 and January 16, 2016.

        Mr. Alicea filed no response to the motion for summary judgment.  If a summary

judgment motion is unopposed, Rule 56 "authorizes the court to consider a fact as undisputed,"

but it does not permit the court to grant summary judgment by default.  Under the summary

judgment standard, if the moving party fails to meet its initial burden of production, the opposing

party need not produce anything.  *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc*., 210

F.3d 1099, 1102–03 (9th Cir.2000).  The Court therefore, addresses the SCORE Defendants'

REPORT AND RECOMMENDATION - 1

motion for summary judgment on the merits and considers the facts set forth in the declarations supporting their motion as undisputed.

Having reviewed the motion for summary judgment, declarations, the Amended Complaint, and balance of the record, and for the reasons set forth herein, the undersigned recommends that the SCORE Defendants' motion for summary judgment be granted.

## STATEMENT OF UNDISPUTED FACTS

**A.     Plaintiff's December Incarceration at SCORE Jail**

Mr. Alicea is frequently incarcerated in jail, and has a history of mental illness.  Dkt. 46, Declaration of Eric C. Nelson, ARN, Health Services Administrator of CCS at SCORE, at ¶ 2; Dkt. 47, Declaration of Ron Whitten-Bailey, ARNP, Nurse Practitioner of CCS at SCORE, at ¶ 2.  Medical records at SCORE Jail obtained from St. Joseph's Hospital reflect that Mr. Alicea sustained injuries on December 9, 2015 when he was riding a motorcycle while under the influence of methamphetamine.  *Id.*, Dkt. 46-1, Ex. 1, pp. 1-4; Dkt. 47-1, Ex. 1, pp. 1-4 [St. Joseph's Hospital Records][1].

Mr. Alicea was incarcerated at SCORE Jail for three weeks.  He was booked on December 22, 2015 and transferred out on January 14, 2016.  Dkt. 10 at 4, 4.3.  This was the fifth time Mr. Alicea had been booked into the SCORE jail.   Dkt. 54, Declaration of Penny Bartley, Director of SCORE, ¶ 3.  Mr. Alicea was previously incarcerated at SCORE in November of 2014, and January, February and March of 2015.  *Id.*

//

//

---

[1] All citations are to CM/ECF numbering.

REPORT AND RECOMMENDATION - 2

1

**B.       Failure to File Grievance at SCORE**

2

Mr. Alicea alleges three claims related to the SCORE defendants: (1) he was denied pain

3

medication for the injuries he sustained in his motorcycle accident; (2) he was forced to sleep on

4

the floor and because of his injuries, he had difficulty getting up and as a result, he defecated on

5

himself several times; and (3) he verbally asked for medical attention and was ignored.  Dkt. 10,

6

at 3-5.  Mr. Alicea never filed a grievance at SCORE regarding any of the allegations in his

7

Amended Complaint.  Dkt. 54, Bartley Decl, ¶ 5.  All persons booked into SCORE are provided

8

access to the Inmate Manual, which sets out, in relevant part, the grievance procedure that must

9

be followed:

10

> You have the right to a prompt and professional response to each legitimate grievance. All grievances must be submitted using a Grievance Form, available to you upon request.

11

12

13

> Grievances must be submitted within 24 hours and need to specifically detail the reasons for your grievance, and the specific resolution you are seeking; however, your suggested resolution may not seek financial compensation.

14

15

16

> Medical grievances will be submitted through the medical staff and will be adjudicated by medical staff.

17

> Both the grievance and response to the grievance must be in writing.

18

Dkt. 54, Exh. C (Inmate Manual, § 6.4).

19

Mr. Alicea read and signed a form acknowledging that it was his responsibility to

20

review and understand the rules outlined in the Inmate Manual.  *Id.*, Bartley Decl. ¶ 5, and,

21

Exh. B.  Mr. Alicea was also familiar with the procedure for filing an inmate grievance, because

22

he had frequently been at SCORE and because he had filed a grievance during one of his

23

previous stays at SCORE.  *Id.*, Bartley Decl, ¶ 7, and Exh. D.  In his amended complaint, Mr.

24

25

26

REPORT AND RECOMMENDATION - 3

Alicea states he did not fully exhaust his administrative remedies at SCORE because he is not knowledgeable in the "legal process."  Dkt. 4, at 5.

**C.      Officer Summers – Denial of Request for Help**

Mr. Alicea claims that on January 11, 2016, Officer Summers said "[Alicea] did not need medical attention and CO Summers was not going to call them."  Dkt 10 at 4.2.  Mr. Summers states that he was not working on January 11, 2016.  Dkt. 55, Declaration of Spencer Summers, ¶ 3.  Officer Summers states that he had no interaction with Mr. Alicea.  *Id*., ¶ 5.  Mr. Alicea admits that he was seen by medical staff a short time later that same day.  Dkt. No. 10, at 5.

**D.      Sleeping on Mattress for Four Days**

Mr. Alicea was booked into SCORE on December 22, 2015.  Dkt. 10 at 4.  Mr. Alicea alleges that he told the booking officer he was in pain and was on pain medications due to the injuries he sustained in the motorcycle accident.  Dkt. 10, at 3.  The booking sheet indicates that the Arresting/Transport Officer noted that Mr. Alicea had no medical conditions needing attention.  Dkt. 54, Bartley Decl., Exh. A.

After booking, Mr. Alicea was placed in pod N5, cell 12, bed C, which is the upper right bunk, where he stayed from December 22, 2015 until December 24, 2015.  On December 24, 2015, Mr. Alicea was moved to pod S1, cell 6, bed E.  Due to high occupancy, his bed was on the floor.  Mr. Alicea was provided a mattress in a plastic "boat" which elevates the mattress approximately four inches off the floor.  He remained in this cell until December 28, 2015.  He was then moved to pod N6 – 04, which is an open pod without individual cells.  Mr. Alicea had his own elevated bed in this cell.  *Id*., Bartley Decl., ¶ 9.

Officer Summers does not recall that any inmate, including Mr. Alicea, ever defecated on himself.  Dkt. 55, Summers Decl., at ¶ 5.

REPORT AND RECOMMENDATION - 4

1

2 **E.      Medical Treatment**

3          Correct Care Solutions (CCS) provides medical care for inmates at SCORE pursuant to a

4 contract between CCS and SCORE.  Facts relating to Mr. Alicea's medical care were provided

5 by Defendants CCS and Ron Whitten-Bailey (hereinafter "Medical Providers") in declarations

6 supporting their motion for summary judgment.  Dkts. 45 (Motion for Summary Judgment), Dkt.

7 46 (Declaration of Eric C. Nelson, ARNP, Health Services Administrator of CCS at SCORE),

8 and Dkt. 47 (Declaration of Ron Whitten-Bailey, ARNP, Health Services Administrator of CCS

9 at SCORE).  This Court granted the Medical Providers' motion for summary judgment on

10 November 21, 2016.  Dkts. 52 and 57.

11          On December 23, 2015, the day after he was booked into the SCORE Jail, the Medical

12 Providers began giving Mr. Alicea pain medications and continued to give him pain medications

13 every day through his release.  Dkt. 46, Nelson Decl. at ¶ 4; Dkt. 47, Whitten-Bailey Decl. at ¶ 3;

14 Dkt. 47-1, Ex. 2, pp. 18-23.  A list of medications administered to Mr. Alicea during this time

15 period included ibuprofen, acetaminophen, Wellbutrin Sr, Trazodone, and Prazosin.  *Id*.

16

17          Nurse Practitioner Whitten-Bailey states that there are good reasons not to give narcotics

18 to inmates with histories of drug abuse, including that it contributes to their addiction while they

19 are in jail.  Dkt. 47, Whitten-Bailey Decl., ¶ 4.  Providing non-narcotic pain medication is

20 generally an accepted way of treating the pain of inmates with narcotics addictions.  *Id*.

21

22          On December 27, 2016, at 6:49 am, CCS received a Medical Service Request (Medical

23 Kite) from Mr. Alicea.  Dkt. 46, Nelson Decl., ¶ 5, Dkt. 46-1, Ex. 3 [12/27/15 Medical Kite], pp.

24 25-26. The Kite was entered into the system by CCS employee Jacquelyn Bensinger.  *Id*.  The

25 same day, at 3:40 pm, Mr. Alicea was examined by Ron Whitten-Bailey, ARNP.  *Id*., Nelson

26

REPORT AND RECOMMENDATION - 5

Decl., Ex. 4, pp. 29-30 [Sick Calls]; Dkt. 47, Whitten-Bailey Decl., ¶ 5.  At this visit, Mr. Whitten-Bailey provided Mr. Alicea with an additional mattress and anti-inflammatory medications. Dkt 10, p. 4; Dkt 12 (Supplement to Amended Complaint), pp. 2-3 of 14.  In response to Mr. Alicea's allegation that he was "again denied pain meds," *id.*, Nurse Practitioner Whitten-Bailey states that Mr. Alicea was denied narcotics but received non-narcotic pain medications, including ibuprofen and acetaminophen.  Dkt. 47, Whitten-Bailey Decl., ¶ 5, Dkt. 47-1, Ex. 4, pp. 28-29.  In the Objective section of his medical records, Mr. Whitten-Bailey described Mr. Alicea as "Alert and oriented to person, place, and time. Appropriate affect. Moving all extremities normally. Gait normal. No focal defects seen." *Id.*  However, Mr. Whitten-Bailey assessed Mr. Alicea as having acute pain, and a history of PTSD, abnormal grief loss, and depression. *Id.*

Mr. Whitten-Bailey's plan was to obtain the medical records from St. Joseph's Hospital and Greater Lakes, and he prescribed more ibuprofen and APAP (acetaminophen) for pain. *Id.*, p. 29. On December 31, 2016, Mr. Alicea was examined by CCS medical provider Virginia Richardson, ARNP, for a Mental Status Exam.  Dkt. 46, Nelson Decl., ¶ 9; Dkt. 46-1, Ex. 2, pp. 9-10.  Nurse Richardson prescribed additional medications for Mr. Alecia, including the anti-depressants Bupropion, Wellbutrin Sr, Trazodone, and Prazosin (for high blood pressure). *Id.*, Ex. 2, pp. 9, 14-17.

On January 2, 2016, Mr. Alicea submitted and CCS received, a second Medical Kite. Dkt. 46, Nelson Decl., ¶ 10; Dkt. 46-1, Ex. 5, p. 33 [01/02/16 Medical Kite].  In this Kite, Mr. Alicea requested adjustment of his medication Wellbutrin. *Id.*  CCS informed Mr. Alicea that day that he would be seen by a mental health provider. *Id.*

REPORT AND RECOMMENDATION - 6

1    On January 5, 2016, Mr. Alicea was examined by Virginia Richardson, ARNP, for a

2  Mental Status Exam in response to his medical kite.  Dkt. 46, Nelson Decl., ¶ 11, Dkt. 46-1, Ex.

3  2, p. 10.  Nurse Richardson amended the Wellbutrin prescription as requested by Mr. Alicea. *Id.*,

4  Ex. 2, p. 16.  Mr. Alecia's other prescriptions were already extended past that date.  *Id.*

5    Although Mr. Alecia indicates his leg was infected on January 10, 2016, and that he saw

6  Mr. Whitten-Bailey on this date, (Dkt 10, ¶ 5), the medical records reflect that the visit occurred

7  on January 11, 2016.  Dkt. 47, Whitten-Bailey Decl. at ¶ 12; Dkt. 47-1, Ex. 4, p. 29. Mr. Alicea

8  did not submit a medical request form for this condition but states that he waited in the pill line

9  and showed his condition to a nurse, who immediately walked Mr. Alicea down to the medical

10  area, where he was again seen by medical provider Ron Whitten-Bailey.  Dkt 10, p. 5; Dkt. 47,

11  Whitten-Bailey Decl., ¶ 6.  When Mr. Whitten-Bailey examined Mr. Alicea, he noted that there

12  was a lower left leg wound that was healing, but that it did not have infection.  Dkt 12 at 2 of

13  14); Dkt. 47, Whitten-Bailey Decl., ¶ 6; Dkt. 47-1, Ex. 4 at 28. Mr. Whitten-Bailey indicated:

14  "Area is dry without redness or drainage – temperature of leg is the same. No increase[] in stated

15  pain."  *Id.*  Mr. Whitten-Bailey indicated to Mr. Alicea that he should wash the wound with soap

16  and water when showering and otherwise keep the area dry.  *Id.*

17    On January 14, 2016, Mr. Alicea was transferred to the King County Regional Justice

18  Center (RJC Jail).  Dkt. 10, p. 4.3.

## LEGAL STANDARDS

### A.   Summary Judgment

    The Court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence

REPORT AND RECOMMENDATION - 7

of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

**B.     42 U.S.C. § 1983**

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532.  That plaintiff may have suffered harm, even if due to another's negligent conduct,

REPORT AND RECOMMENDATION - 8

does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

To prevail and recover damages against any of the named prison officials, the inmate must prove (1) that the specific prison official, in acting or failing to act, was deliberately indifferent to the mandates of the Eighth Amendment and (2) that this indifference was the actual and proximate cause of the deprivation of the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

**C.      Eighth Amendment – Deliberate Indifference to Medical Need**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The two prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (*citing McGuckin*, 974 F.2d at 1060).  To state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health ...." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice'

REPORT AND RECOMMENDATION - 9

will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (*citing Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir.1995); *see also McGuckin*, 974 F.2d at 1050. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981). To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

## DISCUSSION

**A. Exhaustion**

Under the Prison Litigation Reform Act ("PLRA"), a Section 1983 claim cannot be pursued until a prisoner has completely exhausted all available administrative remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory, *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002), and is only satisfied when the inmate has sought final administrative review. *Booth v. Churner*, 532 U.S. 731, 735 (2001).

REPORT AND RECOMMENDATION - 10

1   *Rideau v. Woodford*, 399 Fed. Appx. 258, 259–60 (9th Cir. 2010) (dismissal of failure to provide

2   medical treatment claim for failure to exhaust).

3           "Proper exhaustion" under the PLRA means that "a prisoner must complete the

4   administrative review process in accordance with the applicable procedural rules, including

5   deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81,

6   88, 93 (2006).  Proper exhaustion demands compliance with an agency's deadlines and other

7   critical procedural rules because no adjudicative system can function effectively without

8   imposing some orderly structure on the course of its proceedings.  *Woodford*, 548 U.S. at 90-91.

9   "The PLRA eliminates unwarranted federal-court interference with the administration of prisons,

10  and thus seeks to afford corrections officials time and opportunity to address complaints

11  internally before allowing the initiation of a federal case.  The PLRA also was intended to

12  "reduce the quantity and improve the quality of prisoner suits."  *Id*. at 93-94.

13

14          The undisputed facts reflect that Mr. Alicea failed to file a grievance at SCORE related to

15  the claims he alleges against SCORE and its employees.  Dkt. 54, Bartley Decl., ¶ 8.  Mr. Alicea

16  argues that his lawsuit should not be dismissed for failure to exhaust remedies because "I'm not

17  knowledgeable in the legal process."  Dkt. 10, at 4.2.  However, the record reflects that Mr.

18  Alicea was incarcerated at SCORE on numerous occasions, he acknowledged reviewing the

19  Inmate Manual (which outlined the grievance procedure), and he was aware of the inmate

20  grievance process at SCORE as he had previously filed a grievance during his stay at SCORE in

21  February 2015.  Dkt. 54, Bartley Decl., at ¶ 5, and Exhs. B and C.

22

23          Accordingly, Mr. Alicea has failed to exhaust his administrative remedies against

24  SCORE and Officer Spencer and his claims may be dismissed without prejudice on this basis

25

26

REPORT AND RECOMMENDATION - 11

1   alone.  However, there is also no evidence that the SCORE Defendants violated Mr. Alicea's

2   Eighth Amendment rights.

3   **B.      Eighth Amendment – Deliberate Indifference to Medical Needs**

4        Mr. Alicea claims that on January 11, 2016, his leg was infected "so bad it smelled

5   of rotten flesh," and CO Summers declined to contact medical staff.  Dkt. 10, at 5.  Mr. Alicea

6   concedes, however, that he was medically evaluated later the same day for this condition.  Dkt.

7   *Id.*, at 5.  Moreover, the medical records establish that Mr. Alicea did not have an infection.

8   Defendant Bailey-Whitten, ARNP testified that he examined Mr. Alicea on this date and found

9   the "[a]rea is dry without redness or drainage -- temperature of leg is the same.  No increase[] in

10  stated pain."  Dkt. 47, at 3; *see also* Dkt. No. 47-1, at 28 (medical note).  His medical assessment

11  was "[h]ealing wounds left lower leg - no signs of Infection."  *Id*.  Mr. Bailey-Whitten told Mr.

12  Alicea that he should wash the wound with soap and water when showering and otherwise keep

13  the area dry.  *Id*.

14        Based on the medical records, which are not in dispute, Mr. Alicea's condition does not

15  qualify as a serious medical need.  "A 'serious' medical need exists if the failure to treat a

16  prisoner's condition could result in further significant injury or the 'unnecessary and wanton

17  infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992¸ *overruled on other*

18  *grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  *See Gray v.*

19  *Hernandez*, 651 F.Supp.2d 1167, 1176 (S.D. Cal. 2009) ("Severe" temporary pain from a

20  stomach illness was not a "serious medical need."); *Doty v. County of Lassen*, 37 F.3d 540, 546

21  (9th Cir. 1994) ("[N]ausea, shakes, headache and depressed appetite due to unresolved family

22  situational stress" were not serious medical needs."): *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th

REPORT AND RECOMMENDATION - 12

1    Cir. 1990) (Headaches, nausea and pains were not a "serious medical need" and denial of aspirin

2    and antacid for them did not constitute a constitutional violation).

3         Even assuming Mr. Alicea's leg injury constituted a "serious medical need," there is no

4    evidence that Officer Summers was deliberately indifferent to that need.  In that regard,

5    "[s]weeping conclusory allegations will not suffice to prevent summary judgment. The prisoner

6    must set forth specific facts as to each individual defendant's deliberate indifference." *Leer v.*

7    *Murphy*, 844 F.2d 628 (9th Cir. 1988).  To support a claim of deliberate indifference, a plaintiff

8    must show: "an acute physical condition, the urgent need for medical care, the failure or refusal

9    to provide it, and tangible residual injury." *Stiltner v. Rhay*, 371 F.2d 420, 421 n. 3 (9th

10   Cir.1967). "[A] prison official cannot be found liable under the Eighth Amendment for denying

11   an inmate humane conditions of confinement unless the official knows of and disregards an

12   excessive risk to inmate health or safety; the official must both be aware of facts from which the

13   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

14   inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

15        Mr. Alicea has presented no evidence to suggest he had an injury or risk of harm serious

16   enough to meet the first element of his claim.  Nor has he presented evidence to show that

17   Officer Summers was actually aware of his alleged need for medical treatment and the harm that

18   would occur if treatment was not provided.  Mr. Alicea did not submit a medical request form for

19   his leg injury but states that he waited in the pill line and showed his condition to a nurse, who

20   immediately walked Mr. Alicea down to the medical area, where he was seen and treated by

21   medical provider Ron Whitten-Bailey.  Dkt 10, p. 5; Dkt. 47, Whitten-Bailey Decl., ¶ 6.  Even if

22   Mr. Alicea made an oral request for medical treatment and Officer Summers told him he did not

23   need treatment, Mr. Alicea in fact received medical treatment that same day (Dkt. 10, 4.2.) and

REPORT AND RECOMMENDATION - 13

has provided no evidence that there was any delay or that if Officer Summers caused a delay, that the delay was harmful.  *See, e.g., Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (mere delay in treatment is insufficient to state a claim of deliberate medical indifference unless the denial was harmful).  *See also, Report and Recommendation*, Dkt. No. 52 at 10 ("Mr. Alicea has shown no such tangible residual injury from any delay in his treatment or even that he required additional treatment beyond the pain medication he was already receiving.").

Based on the foregoing, the undersigned recommends that the SCORE Defendants' motion for summary judgment be granted on this claim.

**C.   Sleeping on Mattress for Four Days**

Mr. Alicea alleges that he had to sleep on a mattress for a few days when he was at the SCORE jail and that he was so sick that he had trouble getting up and defecated on himself several times.  According to Director Bartley, Mr. Alicea was on a mattress for four nights, but that mattress was on a "boat" which held the mattress off the floor.  Dkt. 54, Bartley Decl., ¶ 9. For the remainder of his stay, Mr. Alicea was in an elevated bed. *Id.*  According to Officer Summers, he was not aware of any SCORE prisoner, including Mr. Alicea, ever defecating on themselves.  Dkt. 55, Summers Decl.,

To state an Eighth Amendment claim based on conditions of confinement, a prisoner-plaintiff must present plausible factual allegations that satisfy a two-part test.  *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir.2005).  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Farmer*, 511 U.S. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety."  *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir.1995).  To satisfy the subjective prong, a plaintiff

REPORT AND RECOMMENDATION - 14

must show that the defendant acted with deliberate indifference, which is more than mere inadvertence or negligence.  *See Farmer*, 511 U.S. at 833 & n. 4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The objective requirement is met if the prison official's acts or omissions deprived a prisoner of "the minimal civilized measure of life's necessities,' " *i.e.* adequate shelter, food, clothing, sanitation, medical care, and personal safety.  *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir.2010) (*quoting Farmer*, 511 U.S. at 834); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.2000).  "[T]he routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry." *Johnson*, 217 F.3d at 726; *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (to the extent that prison conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses).  Instead, "extreme deprivations are required" to rise to the level of a constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  In determining whether a deprivation of a basic necessity meets this standard, a court must consider the circumstances, nature, and duration of the deprivation.  "The more basic the need, the shorter the time it can be withheld." *Johnson*, 217 F.3d at 731 (citation omitted).

Isolated instances of a prisoner being deprived a bed, mattress, and/or conditions conducive to sleeping for 24 hours or more do not satisfy the objective prong of an Eighth Amendment violation.  *See, e.g.*, *Centeno v. Wilson*, No. 11–15738, 479 Fed. Appx. 101, 102 (9th Cir.2012) (prisoner alleging he was forced to sleep on a cold floor without a mattress or blanket for seven days during a contraband watch did not allege the extreme deprivation required to support an Eighth Amendment violation); *Hernandez v. Denton*, 861 F.2d 1421, 1435 (9th Cir.1988), *vacated on other grounds*, 493 U.S. 801 (1989) (plaintiff alleging he was forced to sleep on a sheet metal bunk without a mattress for one night did not state a cognizable

REPORT AND RECOMMENDATION - 15

constitutional violation).  *See also, Johnson v. Pelker*, 891 F.2d 136, 138-39 (7th Cir. 1989) (sleeping for five days on a mattress without a bedframe is not extreme); *Rodgers v. Thomas*, 879 F.2d 380, 383-84 (8th Cir.1989) (Sleeping for five days on a mattress without a bedframe is not extreme); *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986) (the Constitution does not require elevated beds for prisoners); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (same).

In light of the foregoing, Mr. Alicea's allegation that he suffered physical discomfort because he slept four nights on an elevated mattress is not unconstitutional "punishment." Therefore, the undersigned recommends that the SCORE Defendants' motion for summary judgment should be granted on this claim.

**D.    Medications Provided at SCORE**

With regard to Mr. Alicea's claims that he was denied appropriate medication at SCORE, the SCORE Defendants refer to and incorporate the facts and briefing set forth in the motion for summary judgment of Defendants Correct Care Solutions and Bailey-Whitten.   Mr. Alicea's claims against Correct Care Solutions and Bailey-Whitten have been dismissed with prejudice. Dkts. 52 and 57.   Mr. Alicea's amended complaint also includes allegations that the SCORE Defendants failed to give him narcotic medication and delayed in seeing him.   However, as this Court previously held and as is reflected in Mr. Alicea's medical records, Mr. Alicea was provided pain mediation from his first full day at SCORE and throughout his stay, he was given an extra mattress, and his leg wound was treated.   Mr. Alicea has presented no evidence that the failure to administer narcotic medication instead of the non-narcotic pain relievers he was given constituted deliberate indifference or that there was any delay in his treatment as he began receiving pain medications almost immediately upon being booked into the jail.   Dkt. 52 at 9-10.

REPORT AND RECOMMENDATION - 16

1    Based on the foregoing, the undersigned recommends that the SCORE Defendants'

2    motion for summary judgment be granted on this claim.

3    **E.    *Monell* Liability - SCORE**

4    Mr. Alicea has sued SCORE as an entity.  An entity can be found liable under § 1983

5    only where the entity itself causes the constitutional violation at issue, but "respondeat

6    superior or vicarious liability will not attach under § 1983."  *Monell v. New York City Dept.*

7    *of Social Services*, 436 U.S. 658, 694-95 (1978).   If "there is no constitutional violation, there

8    can be no municipal liability."  *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th

9

10   Cir. 2008).

11   To establish § 1983 entity liability, Mr. Alicea must prove that (1) he was deprived of a

12   constitutional right; (2) the entity had a custom or policy; (3) that amounted to a deliberate

13   indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind

14

15   the constitutional violation.  *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009)

16   (*citing Monell*, 436 U.S. at 694).

17   Mr. Alicea has not identified any SCORE custom or policy that amounts to deliberate

18   indifference, or that any such policy was the moving force behind a constitutional violation.

19   Moreover, as there is no evidence that Mr. Alicea's constitutional rights were violated during his

20   relevant stay at SCORE, there is no § 1983 liability as to SCORE.  The SCORE Defendants are

21   entitled to summary judgment on this claim.

22                                      **CONCLUSION**

23

24   Viewing the record in the light most favorable to Mr. Alicea, the undersigned concludes

25   that Mr. Alicea has failed to demonstrate the existence of a material issue of fact relating to his

26   claims that the Defendants SCORE and Officer Spencer Summers violated his constitutional

REPORT AND RECOMMENDATION - 17

1    rights.  Accordingly, it is recommended that defendants' motion for summary judgment (Dkt. 53)

2    be **GRANTED** and all claims against them **dismissed with prejudice**.

3         Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

4    Procedure, the parties shall have fourteen (14) days from service of this Report and

5    Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections

6    will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140

7    (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the

8    matter for consideration on **February 17, 2017,** as noted in the caption.

9         **DATED** this  23rd  day of January, 2017.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18