1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
7                      WESTERN DISTRICT OF WASHINGTON
                                  AT TACOMA
8
    NATHAN R. ALICEA,
9
                               Plaintiff,            No. C16-5153 RBL-TLF
10
           v.
                                                     **REPORT AND RECOMMENDATION**
11                                                   **Noted for:  July 21, 2017**
    SCORE JAIL, et al.,
12
                               Defendants.
13
14          Defendant Zachary Johnson moves for dismissal of Plaintiff Nathan R. Alicea's claims

15   pursuant to Federal Rule of Civil Procedure (Fed. R. Civ. P.) 56.  Defendant Johnson asserts that

16   he is entitled to qualified immunity and that Mr. Alicea has failed to demonstrate a serious

17   medical need or deliberate indifference to that need.  Dkt. 66.[1]

18          The undersigned recommends that Defendant Johnson's motion for summary judgment

19   be granted as Mr. Alicea has failed to state a constitutional violation, and therefore Defendant

20   Johnson is entitled to qualified immunity.

21
22
23
    ─────────────────────────
24   [1] NaphCare, Inc., John Slothower, and Zackary Johnson are the only remaining defendants in this lawsuit.  *See* Dkts.
     49, 57, and 59 (dismissing Pierce County, Correct Care Solutions, Ron Whitten-Bailey, and SCORE Defendants).
25   Naphcare and Slothower's motion for summary judgment (Dkt. 61) is addressed by separate report and
     recommendation.
26
    REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**STATEMENT OF FACTS**

In his verified amended complaint[2], Mr. Alicea states that he was in a motorcycle accident on December 19, 2015, and that he sustained a dislocated right shoulder, dislocated hip, and five broken ribs. Dkt. 10, p. 3. After he was released from the hospital, Mr. Alicea was taken into custody, handcuffed, placed in a wheelchair, and taken to SCORE Jail by his Department of Corrections ("DOC") Community Corrections Officer Johnson. Mr. Alicea alleges that he was in a lot of pain and Officer Johnson denied him wheelchair access into the SCORE Jail. Instead, he alleges Officer Johnson physically grabbed his left arm and held him up and made him walk on his injuries which "put unbareable [sic] pain that no person should every [sic] have to go through in that kind of state, to be booked into the SCORE Jail on the 22nd of Dec. 2015." *Id.*

Officer Johnson was tasked with monitoring Mr. Alicea's DOC supervision. Dkt. 67, Declaration of Zachary Johnson, ¶¶ 2-4. Mr. Alicea had been on "warrant status" for his failure to comply with the terms of his supervision, including "failure to report" and "failure to make himself available for urinalysis." *Id.*, ¶ 4. On December 21, 2015, Officer Johnson was alerted that Mr. Alicea was at St. Joseph's Hospital in Tacoma receiving treatment for the injuries he sustained in the motorcycle accident. *Id.*, ¶ 5. Officer Johnson went to the hospital later that day to speak with Mr. Alicea about the warrant. Officer Johnson arranged for a "conditional release" to address the DOC violations, require Mr. Alicea to comply with his medical treatment

---

[2] A verified complaint or motion may be used as an opposing affidavit under Fed.R.Civ.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (motion).

REPORT AND RECOMMENDATION - 2

1    directives, and allow him to resume his supervision in the community after he was released from

2    the hospital.  *Id.*; ¶¶ 5, 6.  Mr. Alicea agreed to the terms of the conditional release.  Officer

3    Johnson gave his business card to the nursing staff and asked that they inform him when Mr.

4    Alicea was to be discharged from the hospital.  *Id.*, ¶ 7.

5         The next day, December 22, 2015, Officer Johnson was notified by the hospital that Mr.

6    Alicea was putting his pants on in an attempt to leave the hospital without being discharged by

7    the staff.  Officer Johnson and a colleague went to the hospital, spoke with a nurse, and saw Mr.

8    Alicea in his room sitting upright on his bed.  Mr. Alicea denied that he had attempted to flee the

9    hospital.  *Id.*, ¶ 8.  Officer Johnson spoke with the attending doctor who explained he would

10   release Mr. Alicea from the hospital with a clearance to be booked into jail, because "if he's

11   good enough to try and leave on his own, then he's not hurt enough for a hospital."  *Id.*, ¶ 9.

12        Officer Johnson placed Mr. Alicea into custody and was directed to transport him to

13   SCORE Jail.  *Id.*, ¶ 10.  After the hospital provided Mr. Alicea with discharge papers and

14   prescription information, Officer Johnson directed Mr. Alicea to dismount from his bed.  He then

15   handcuffed Mr. Alicea in front of his body, placed him in a wheelchair, and wheeled him to a

16   DOC vehicle outside.  Mr. Alicea stepped into the back of the vehicle without assistance.  *Id.*,

17   11.  Mr. Alicea never indicated to Officer Johnson that he was unable to transfer from the

18   hospital bed to the wheelchair or from the wheelchair to the DOC vehicle.  Officer Johnson

19   received no directive regarding specialized care or treatment needs for Mr. Alicea.  *Id.*, ¶ 12.

20        During his transport to SCORE Jail, Mr. Alicea remained silent during the 30 minute car

21   ride and did not verbally express any complaint about his injuries or pain.  *Id.*, ¶ 13.  When they

22   arrived at SCORE Jail, the DOC vehicle was parked 20 to 25 feet from the entrance to the

REPORT AND RECOMMENDATION - 3

facility. *Id.*, 14. Officer Johnson asked Mr. Alicea if he needed any assistance crossing the concrete parking lot from the DOC vehicle to the booking area and Mr. Alicea responded "no" and indicated he could walk. *Id.* Officer Johnson used the "escort position" by placing his hand on Mr. Alicea's upper left arm and guiding him toward the booking area. During the short walk, Mr. Alicea made no complaints of pain or discomfort. *Id.*, ¶ 15.

Once inside of SCORE Jail, Mr. Alicea sat down and Officer Johnson provided Mr. Alicea's medical documentation to the medical staff at SCORE Jail. *Id.*, ¶ 16. Mr. Alicea then completed the booking process, which included a medical screening intake form provided by SCORE Jail. *Id.*; Dkt. 12 (Supplement to Complaint), p. 6. The form includes a section dealing with mobility in which a box representing the need for a wheelchair appears. *Id.*, p. 9. The form identifies Mr. Alicea as having a "limp", but the box indicating a need for a wheelchair was not checked. Mr. Alicea signed the form on December 22, 2015, affirming the information reflected on the form was correct. *Id.*

Officer Johnson had no further conversation or interaction with Mr. Alicea. Officer Johnson's brief transport of Mr. Alicea represents the entirety of their interaction. Dkt. 67, ¶ 16.

### SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the

REPORT AND RECOMMENDATION - 4

1   absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato*

2   *Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).  A nonmoving party's failure to comply with local

3   rules in opposing a motion for summary judgment does not relieve the moving party of its

4   affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v.*

5   *Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

6         "If the moving party shows the absence of a genuine issue of material fact, the non-

7   moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine

8   issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex*

9   *Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  The non-moving party may not rely upon mere

10  allegations or denials in the pleadings but must set forth specific facts showing that there exists a

11  genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A plaintiff

12  must "produce at least some significant probative evidence tending to support" the allegations in

13  the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

14        Factual disputes whose resolution would not affect the outcome of the suit are irrelevant

15  to the consideration of a motion for summary judgment. *Anderson*, 477 U.S. at 248.  In other

16  words, "summary judgment should be granted where the nonmoving party fails to offer evidence

17  from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square*

18  *D Co.*, 68 F.3d 1216, 1121 (9th Cir. 1995).

19                                    **DISCUSSION**

20        "[Q]ualified immunity protects government officials 'from liability for civil damages

21  insofar as their conduct does not violate clearly established statutory or constitutional rights of

22  which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

REPORT AND RECOMMENDATION - 5

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Determining whether an official is entitled to qualified immunity requires a two-part analysis.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier*, 533 U.S. at 201.  If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established."  *Saucier*, 533 U.S. at 201.  Whether an alleged act is a violation of a federal right and whether the right was clearly established at the time of the violation are pure legal questions for the court.  *See Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003).  A right is "clearly established" for the purpose of qualified immunity if "'it would be clear to a reasonable [officer] that his conduct was unlawful in the situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional."  *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (*quoting Saucier*, 533 U.S. at 202).

A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."  *Pearson*, 555 U.S. at 231-32.  The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative.  *See, e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

REPORT AND RECOMMENDATION - 6

The undersigned concludes that Mr. Alicea's allegations, even if true, do not establish a constitutional violation. Therefore, Defendant Johnson is entitled to qualified immunity.

Mr. Alicea alleges that Officer Johnson violated his Eighth Amendment protections. Dkt. 10 at 3, 4.5. To prevail under this theory, a plaintiff must show that (1) he had a "serious medical need" and (2) the defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The entirety of Mr. Alicea's claim against Officer Johnson rests on the following allegation:

> I was in a lot of pain and my CCO Zachary Johnson denied me wheel-chair access into the SCORE Jail and my CCO Zachary Johnson physically grab [sic] my left arm and held me up and made me walk on my injuries which put unbareable [sic] pain that no person should every [sic] have to go through in that kind of state.

Dkt. 10 at 4.

Defendant Johnson argues that only those medical conditions present during transport from the hospital to SCORE Jail bear any relevance to a determination of whether Mr. Alicea was suffering from a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992, overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). It is undisputed that Mr. Alicea was involved in a motorcycle collision and sustained injuries requiring hospitalization and follow-up treatment after he was admitted to jail. It is not logical to conclude that only symptoms suffered by Mr. Alicea during his transport can be considered in determining whether a serious medical need existed. However, even assuming the existence of a serious

REPORT AND RECOMMENDATION - 7

medical need, there is no evidence that Officer Johnson was deliberately indifferent to Mr.
Alicea's medical needs or pain.

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's
pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096
(citing *McGuckin*, 974 F.2d at 1060).

Officer Johnson knew that Mr. Alicea had been injured in a motorcycle accident and in
fact, visited him in the hospital where he was being treated for those injuries.  He also knew that
Mr. Alicea had attempted to leave the hospital on his own and was told by Mr. Alicea's treating
physician, "[i]f [Mr. Alicea's] good enough to try and leave on his own, then he's not hurt
enough for a hospital."  Officer Johnson received no directives or special instructions regarding
Mr. Alicea's transport, and Mr. Alicea expressed no complaints to Officer Johnson of discomfort
or problems with getting out of the bed into the wheelchair, out of the wheelchair into the car, or
during the 30 minute transport.  When Officer Johnson asked Mr. Alicea if he needed help
getting from the car into the SCORE Jail, Mr. Alicea replied "no" and he made no complaints to
Officer Johnson of discomfort during the walk of 20 to 25 feet from the car to the entrance of
SCORE Jail.  Finally, Mr. Alicea acknowledged in the SCORE Jail's intake form that he did not
need a wheelchair.

Viewing these facts in the light most favorable to Mr. Alicea, the undersigned concludes
that Mr. Alicea has failed to demonstrate the existence of a material issue of fact relating to his
claim that Defendant Zachary Johnson violated his constitutional rights.

REPORT AND RECOMMENDATION - 8

**CONCLUSION**

Based on the foregoing, it is recommended that Defendant Johnson's motion for summary judgment (Dkt. 66) be **GRANTED** and all claims against him be **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **July 21, 2017,** as noted in the caption.

**DATED** this 6th day of July, 2017.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9